## PITT CONST. CO. v. CITY OF ALLIANCE, OHIO.

(Circuit Court of Appeals, Sixth Circuit. April 9, 1926.)

No. 4098.

1. **Municipal corporations** ⟨⟩360(3)—Erroneous blueprints held substantial misrepresentation, rendering city liable to contractor for extra expense of moving dirt to make fill.

Blueprints for coagulation basin to be built for city *held* express representation that it would be located with reference to existing ground surface as shown in cross-sections, and that distance from such surface to bottom was about nine, instead of only three, feet, which discrepancy was substantial misrepresentation, rendering city liable to contractor for extra expense of moving dirt to make fill.

2. **Municipal corporations** ⟨⟩360(3)—Contractor's duty to examine site and investigate character of soil, held not to carry assumption of risk of error in blueprints as to distance from existing surface to bottom of structure.

Contractor's duty, under contract for construction of coagulation basin, to examine site, investigate character of soil, etc., *held* not to carry assumption of risk of substantial error in blueprints as to distance from existing ground surface to bottom of structure; contractor being entitled to accept and formulate bid in reliance on such representation of fact.

3. **Municipal corporations** ⟨⟩360(3)—Contractor's failure to discover inaccuracy of detail plans excused by general custom to figure excavations from detail figures without reference to general plan.

General custom of contractors to figure excavations from detail figures without reference to general plan with its contour lines, un-

less brought to their special attention, would excuse contractor's failure to discover inaccuracy in detail plans as to depth of proposed coagulation basin from existing ground surface by reference to contour lines on general plan.

**4. Municipal corporations ⟨⟩374(3)—Evidence that general plan introduced by city as reason why contractor could not depend on detail plan was also inaccurate held admissible in rebuttal, though such inaccuracy was not alleged in petition.**

Where contractor's claim for extra expense of moving dirt to make back-fill in construction of coagulation basin was based wholly on detail plans inaccurately showing depth of basin from existing ground surface, and defendant city put forward general plan, indicating surface to be lower than shown on detail plan, as reason why contractor could not depend on latter, evidence that general plan was also inaccurate was admissible in rebuttal, though such inaccuracy was not alleged in petition.

**5. Municipal corporations ⟨⟩358(3)—Contract provisions as to city engineer's decisions and estimates and compensation for extra work held not controlling in contractor's action for damages for misrepresentation in plans.**

Provisions of contract for construction of coagulation basin that city engineer's decisions as to meaning of plans and contract should be conclusive, and his estimates conditions precedent to recovery of compensation, and that compensation for extra work could not be recovered without special arrangement for it, *held* not controlling in contractor's suit for damages for misrepresentation in detail plans as to distance from existing ground surface to bottom of structure.

**6. Municipal corporations ⟨⟩374(1)—Computation of damages and theory of petition held not to change character of contractor's action for damages for misrepresentations in plans.**

Contractor's computation of damages for misrepresentations in detail plans as to distance between existing ground surface and bottom of coagulation basin at contract rate for extra excavation, and fact that petition was framed as if based on contract, did not change character of action which was for damages, rather than recovery of compensation under contract for extra work, where petition set up in detail facts showing that claim was based on false inducement or breach.

**7. Municipal corporations ⟨⟩374(5)—Measure of damages to contractor for misrepresentation in plans held reasonable cost of constructing extra embankment, less reasonable cost of work saved by mistake.**

Measure of damages to contractor for misrepresentation as to distance from existing ground surface to bottom of coagulation basin *held* to be reasonable cost of constructing extra embankment necessitated, less reasonable cost of excavation and earth moving, saved to contractor by such mistake, as compared with excavation and moving rightly estimated in reliance on accuracy of plans.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by the Pitt Construction Company against the City of Alliance, Ohio. Judgment for defendant, and plaintiff brings error. Reversed and remanded for new trial.

The city made plans for increasing its waterworks by building, among other things, a new coagulation concrete basin upon the surface of the land adjacent to the existing waterworks. Having advertised for bids and the construction company's bid having been accepted, a contract was made. Complete plans and specifications furnished by the city became a part of the contract, as they had been a part of the advertisement. The plans and specifications, in part, consisted of a set of blueprints identified as 328, the separate sheets of which were 328.1, etc. The ones now important are 328.1, which purported to be the general horizontal plan of all the structures, both existing and to be added, and which contained contour lines, showing elevations above sea level, and 328.4, which purported to show the plans, sections, and details of the new coagulation basin. It contained a horizontal and three vertical cross sections, one longitudinal and two transverse. Each of these vertical sections is definitely located, with reference to the ground, by stated elevation figures on the upper and lower corners of the concrete structure.

It is quite evident that in such a structure its relation to the existing surface would be important, and that such a location that the amount excavated below the existing surface would be just sufficient to furnish the necessary back-fill for supporting the exterior of the concrete walls above the original surface, would require the minimum of earth transportation, and would be the cheapest method. The area might be such that the excavation and the back-fill would be of about the same vertical height. This seems to have been the theory of drawing 328.4. Outside of each end of the three vertical cross sections, the existing original grade is indicated by a wavy horizontal line with cross-hatching below it. In two instances, this is expressly marked "Approximate Original Grade." In every one of the six instances the portion above it, obviously intended as the supporting embankment up to or toward the top of the wall, is marked "fill." Upon each section the scale is given as being one-eighth inch to the foot, the di-

mensions of width and height are given in many places, and in other instances are not stated, so that it would be necessary as to these to scale the drawing. The distances from the fixed lower and upper corners of the structure with stated elevations, to the line showing the present grade, are not stated, but they are plainly apparent upon scaling. It is approximately correct to say that they show a general average excavation of about nine feet and a fill of about nine feet,[1] and the testimony was undisputed that a computation upon this basis showed there would be just about enough spoil from the excavation to make the prescribed back-fill.

It turned out that, when the contractor located the bottom of the basin as directed by the city engineer in charge, it found the excavation to be about three feet, instead of nine. As a result the contractor claims it incurred an extra expense of $9,000 in moving from the nearest available location the dirt necessary to make the back-fill. The contractor's compensating advantage in the lessened excavation for the basin was not reached for consideration.

This suit was brought to recover this $9,000 and some smaller items as damages resulting from the misrepresentation of facts made by the city in its advertisement and specifications. The defenses made as to this main item were: (1) That the blueprints did not amount to a misrepresentation of fact. (2) That the contractor assumed the risk of any such error. (3) That the contractor, at the time of making the contract, was chargeable with notice of this error, and could not rely upon it. (4) That the claim was barred by the arbitration provisions of the contract.

The trial court sustained the first two defenses, did not pass upon the others, and directed a verdict for the defendant city.

H. C. Koehler, of Alliance, Ohio, and W. B. Turner, of Dayton, Ohio (E. H. & W. B. Turner, of Dayton, Ohio, and Hart & Koehler, of Alliance, Ohio, on the brief), for plaintiff in error.

Luther Day, of Cleveland, Ohio (F. C. Hunter and Curtis M. Shetler, both of Alliance, Ohio, and Day & Day, of Cleveland, Ohio, on the brief), for defendant in error.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] 1. We see no escape from the conclusion that 328.4 is an express representation to the contractor that the proposed structure would be located with reference to the existing ground surface as shown in the cross sections thereon. The facts that this surface indication was not expressly so named every time it appeared, and that the actual distances from it up and down to the top and bottom of the new structure were not stated in figures, are immaterial. We think the drawing shows as plainly as if stated in words that the distance from the present surface of the ground down to the bottom of the structure as it is to be built is about nine feet, and, in thus stating it, the word "about" expresses the tolerance indicated by the word "approximate" on the drawing. Such tolerance cannot extend to anything like the discrepancy here shown, and there was a substantial misrepresentation, for which the city was responsible and the contractor was not.

[2] 2. The contract contained this provision: "All bidders under this contract are required before submitting bids to examine the site of the work- * * * and to make all necessary investigations in order to inform themselves thoroughly as to the character of the soil and the magnitude of all the work involved, * * * and the conditions and difficulties that would be encountered in the performance of the work. * * * No plea of ignorance of conditions that exist as the result of failure to make the necessary examinations and investigations will be accepted as a sufficient excuse for any failure or omission on the part of the contractor to fulfill in every detail all the requirements of this contract, or will be accepted as a basis for any claims whatsoever for extra compensation."

It is urged that the contractor's duty to examine the premises carried an assumption by him of the risk that there might be an error of the class which developed. We think this contention unsound. Perhaps the contractor by the use of sufficient instruments and effort, or by reference to whatever elevation datum may be the accepted starting point in that locality, could have ascertained that an elevation of 1026 feet above sea level would have been 3 feet below the ground and not 9 feet below, at the point indicated for the forward bottom corner of the structure. Perhaps not. Surveyors often disagree to that extent. So, too, in the case of Hollerback v. U. S., 233 U. S. 171, 175, 34 S. Ct. 553, 58 L. Ed. 898, the contractor need have sunk only five feet to ascertain that there was rock where the specifications

---

[1] These and all other figures herein are only indicative, not necessarily accurate.

showed there was not; but in this case, as in that, the contractor was entitled to accept, and to formulate his bid in reliance upon, the representation of fact by the other party. In substance and effect we cannot distinguish that case from this. See also U. S. v. Smith, 256 U. S. 11, 41 S. Ct. 413, 65 L. Ed. 808, and cases cited on page 17; Faber v. New York, 222 N. Y. 255, 118 N. E. 609.

[3] 3. It developed upon the trial that the contour lines upon the general plan 328.1 would not check with the elevations given in 328.4. It was claimed, and comparison of the plans seems to indicate, that there is an average difference of something like three feet—that is to say, that the contour lines of 328.1 indicate the surface of the ground to be about three feet lower in elevation than the surface of the ground as shown on 328.4. Hence it is said that the contractor who had both these plans before him was chargeable with notice of the inaccuracy in 328.4 and had no right to rely upon that plan. Doubtless there would be cases where two drawings of a set would be so equally important and mutually so inconsistent that the bidder could not be allowed to say he relied upon one and paid no attention to the other. In this case, 328.4 was upon a scale twice as large as 328.1, the basin was not large, vertical sections were the important things in determining depth of excavation, and, since they indicated it on all four sides of the basin, it might be thought that the contour lines became of such trifling relative importance as to be ineffective for any purpose now under consideration. It is not necessary to decide this, because plaintiff undertook to prove that it was the general custom of contractors in such cases to figure their excavations from the detail figures, and that an experienced contractor would not refer to the general plan with its contour lines for the purpose of checking, in order to see if there was an error in the detail plans, unless there was something to bring it to his special attention. This proof, once rejected, was later in some measure permitted, and we think it was appropriate to this situation; but eventually the court seemingly thought it immaterial. If such a general and customary method of handling such plans was proved it would sufficiently excuse this contractor for not discovering this mistake.

[4] In this connection, and as bearing on the effect which this discrepancy between the two plans should have, plaintiff toward the end of the trial undertook to show that 328.1 was inaccurate by about three feet, just as 328.4 had been inaccurate by about six feet. This was not permitted, because not alleged in the petition, and a motion to amend the pleading, so as to cover the point, was denied, because it was thought the amendment would be immaterial. If, in fact, 328.1 was erroneous, so that, if it had been adopted, there still would have been a misrepresentation to the extent of three feet, that seems to us material. It is at least inconsistent with the theory that, because 328.1 represented the truth, the contractor could not depend upon the accuracy of 328.4. Nor do we see that any further pleading basis was necessary. The petition and the course of the trial made it clear that plaintiff's claim was based wholly upon 328.4; in substance 328.1 was put forward upon the trial by defendant as a reason why plaintiff could not depend upon 328.4; and proof of the inaccuracy of 328.1 was merely proof in rebuttal of a defense presented for the first time at the trial.

[5] 4. The contract contains the usual provisions that the engineer shall determine all questions respecting the construction and meaning of the plans and contract, that his decision shall be conclusive in all cases, and that his estimates shall be a condition precedent to the recovery of any compensation; also that there can be no compensation for extra work, unless a special arrangement was made for it as provided in the general contract. These contract provisions do not control this action. The suit is not brought to recover anything earned under the contract or for extra work of the character contemplated by the contract; it is brought to recover damages for the misrepresentation by which the contract was induced—or, to express the same substance in another form, to recover damages for not furnishing the agreed site. The right to recover such damages is not affected by provisions of this class. Bates v. Rogers (D. C.) 274 F. 659, 661, and cases cited; Faber v. N. Y., supra; Grace Co. v. Chesapeake Co. (C. C. A. 6) 281 F. 904.

[6] It is true that on the trial the plaintiff computed its damages for the excavation which the misrepresentations made necessary, at the rate named in the contract for extra excavation. It is true, also, that the petition is ambiguous as to the nature of its demand. It is framed as if based on the contract, but it sets up in detail the facts on which it relies and these show that the claim is really based upon a false inducement or a breach. These matters do not change the character of the action. They indicate mere-

ly hesitancy or mistake by plaintiff as to its theory of action or measure of damages. [7] The true theory we have stated; the true measure, we think, is arrived at by charging the defendant with the reasonable cost of constructing that extra embankment which would not have been necessary if the drawings had correctly represented the vertical location of the basin, and by crediting it with the reasonable cost of the basin excavation and earth moving which were saved to the contractor by the same mistake in the plan, as compared with the excavation and moving which it rightly estimated in reliance upon the accuracy of the plans.

5. What has so far been said relates to the first cause of action and the main item therein. In so far as this discussion is not applicable to the remaining items of the petition, we find no error in the disposition made of them upon the trial.

The judgment is reversed, and the case remanded for new trial.