Frank T. CLARK, Boyd G. Clark and Charles W. Clark, co-partners d/b/a Clark Contracting Company, Plaintiffs-Appellants,

v.

CITY OF HUMANSVILLE, MISSOURI, a municipal corporation, Defendant-Respondent.

No. 7920.

Springfield Court of Appeals.

Missouri.

July 6, 1961.

Harry H. Kay, Robert J. Quigley, Eldon, for plaintiffs-appellants.

Pufahl & Collins, Bolivar, for defendant-respondent.

STONE, Presiding Judge.

In this action for damages of $5,-400, plaintiffs' appeal is from the order of the circuit court sustaining defendant's motion to dismiss plaintiffs' petition for failure to state a claim upon which relief could be granted. Since the order did not specify otherwise, the dismissal was with prejudice and operated as an adjudication upon the merits. Rule 67.03, V.A.M.R.; V.A. M.S. § 510.150. Of course, the motion to dismiss admitted, for the purposes of the motion, the truth of all facts well pleaded therein and any inferences fairly deducible therefrom; and, on this appeal, we broadly construe the petition most favorably to plaintiffs, giving them the benefit of every reasonable and fair intendment in view of the facts alleged. Jacobs v. Jacobs, Mo., 272 S.W.2d 185, 188(2, 3); Bedell v. Daugherty, 362 Mo. 598, 242 S.W.2d 572, 574(1, 2); Ladue Contracting Co. v. Land Development Co., Mo.App., 337 S.W.2d 578, 582(2–4).

From the petition and the exhibits attached thereto, which are a part thereof for all purposes [V.A.M.S. § 509.130; M. F.A. Mutual Ins. Co. v. Hill, Mo., 320 S.W. 2d 559, 562(2); Beets v. Tyler, 365 Mo. 895, 290 S.W.2d 76, 79(2); Bride v. City of Slater, Mo., 263 S.W.2d 22, 25(1)], the material facts, as alleged, are substantially as hereinafter detailed. In 1957, defendant, a city of the fourth class, published "Notice to Bidders" inviting bids "for the construction of sanitary sewer improvements and sewage disposal lagoon as follows: Lateral Sanitary Sewers and Outfall Lines 10 acres Sewage Disposal Lagoon, complete." This published notice informed prospective bidders that "plans and specifications are on file for examination at the office of the City Clerk, Humansville, Missouri, and at the office of the Engineers, E. T. Archer & Company, 706 Railway Exchange Building, Kansas City, Missouri," from whom a copy of such plans and specifications might be obtained, and specifically required that "bids must be submitted on proposal blanks attached to the specifications." Desiring to bid upon the project, plaintiffs obtained a copy of the plans and specifications with an attached "Contract Form and Bidders Blank" (hereinafter referred to as the contract form), which detailed the material to be furnished and the work to be performed in completion of the project. After itemizing the pipe, trenching and "appurtenances," as to which no issue is raised, the contract form listed and called for a lump sum bid upon "Sewage Disposal Lagoon including approximately 18,000 cu yds of earth work, influent line from Manhole No. 1 but not including Manhole No. 1 and discharge outlet, complete."

Alleging that they relied upon the stated quantity of earth work as being the quantity necessary to construct the sewage disposal lagoon, plaintiffs submitted a lump sum bid of $7,500 for that item. Plaintiffs' bid for the entire project was accepted and, in due time, the job was completed. But, plaintiffs complain that "in order to complete said project, in accordance with the plans and specifications * * *, the plaintiffs were required to remove 36,000 cubic yards of dirt instead of 18,000, as represented to them by the defendant in its Contract Form and Bidders Blank," and that, "by reason of the misrepresentation of the defendant as to the amount of earth work to be done to construct the sewage disposal lagoon," plaintiffs were damaged in the sum of $5,400, for which they pray judgment.

Plaintiffs insist that their petition states a cause of action under "the general rule" formulated and expressed in the annotation at 76 A.L.R. 268, 269, "that where plans or specifications lead a public contractor reasonably to believe that conditions indicated therein exist, and may be relied upon in making his bid, he will be entitled to compensation for extra work or expense made necessary by conditions being other than as so represented." Experiencing the same difficulty that courts obviously have had in

this category of suits in attempting to characterize and classify the cause of action and to consign and cast it into a pre-existing legal pigeonhole bearing a familiar label, defendant's capable counsel comprehensively covers the theories of express contract, implied contract, estoppel, ratification, and fraud and deceit, contending that, whichever theory plaintiffs' petition may count upon, no cause of action was stated. Defendant's position is that recovery on any theory sounding in contract would be barred by V.A.M.S. § 432.070 [1] [e. g., Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874, 179 S.W.2d 108], and that plaintiffs' petition does not state a cause of action for fraud and deceit because (a) all of the essential elements are not pleaded [e. g., Powers v. Shore, Mo., 248 S.W.2d 1, 5(2); Salmon v. Brookshire, Mo.App., 301 S.W.2d 48, 54(5)] and (b) defendant's statement of "approximately 18,000 cu yds of earth work" was only an approximation and defendant could not be liable "for a mistake in estimates."

We find a few cases [2] of this general character in which the courts, seizing upon the fact that the misrepresentation or mistake under consideration was not made intentionally or in bad faith, have regarded the actions as sounding in contract; but these holdings, in each instance enabling the court to do substantial justice by permitting a contractor with a meritorious claim to escape the bar of sovereign tort immunity and thus to fasten liability on the governmental entity involved, are not particularly persuasive as to the nature of the action and, to a cynical critic, might suggest the possibility that teetering jurists

had tumbled on the contract side of the fence in the interest of reaching the right result. To illustrate, in denying the state's contention that the doctrine of sovereign tort immunity barred recovery, it was said in Hersey Gravel Co. v. State, 305 Mich. 333, 9 N.W.2d 567, 569(1), 173 A.L.R. 302, 305, that "(i)t does not necessarily follow that, because plaintiff sought to recover damages resulting from a misrepresentation of subsoil conditions, its claim is in tort. * * * (A)lthough the facts developed at the trial might have justified a tort action, the claim may still properly be for damages for breach of the contract." And, in rejecting a similar contention by the government in United States v. Atlantic Dredging Co., 253 U.S. 1, 12, 40 S.Ct. 423, 425, 64 L.Ed. 735, 738, the court observed: "There is no intimation of bad faith against the officers of the government, and the Court of Claims regarded the representation of the character of the material as in the nature of a warranty; besides, its judgment is in no way punitive. It is simply compensatory of the cost of the work, of which the government got the benefit."

But, recognizing that the cases are not in agreement as to the theory upon which recovery is permitted in actions of this character, we are persuaded to the view that this is not an action on the contract but rather one "to recover damages for the misrepresentation by which the contract was induced." Pitt Const. Co. v. City of Alliance, Ohio, 6 Cir., 12 F.2d 28, 31; Gogo v. Los Angeles County Flood Control Dist., 45 Cal.App.2d 334, 114 P.2d 65, 69; City of Dallas v. Shortall, 131 Tex. 368, 114 S.W.2d 536, 540. Such misrepresentation

1. "No * * * city * * * shall make any contract, * * * unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto * * *."

2. United States v. Atlantic Dredging Co., 253 U.S. 1, 12, 40 S.Ct. 423, 64 L.

Ed. 735, 738(3); City of Wheeling v. John F. Casey Co., 4 Cir., 74 F.2d 794, 796–797, certiorari denied 296 U.S. 593, 56 S.Ct. 106, 80 L.Ed. 420; Hersey Gravel Co. v. State, 305 Mich. 333, 9 N.W.2d 567, 569(1), 173 A.L.R. 302; McCree & Co. v. State, 253 Minn. 295, 91 N.W.2d 713, 720–721(4). See also Faber v. City of New York, 222 N.Y. 255, 118 N.E. 609, where apparently both parties joined in trial on the theory of breach of contract.

was not merged in the written contract so as to bar a subsequent action predicated thereupon. City of Elizabethtown v. Caswell, Ky., 261 S.W.2d 424, 425–426(3); Board of Water Com'rs of New London v. Robbins & Potter, 82 Conn. 623, 74 A. 938, 944(6). And, although many courts have rationalized their decisions involving such situations in terms of fraud [e. g., Pennsylvania Turnpike Commission v. Smith, 350 Pa. 355, 39 A.2d 139, 142(3), permitting recovery for "a substantial *constructive* fraud"; Board of Water Com'rs of New London v. Robbins & Potter, supra, 74 A. loc. cit. 946–947(18), permitting recovery; Palmberg v. City of Astoria, 112 Or. 353, 228 P. 107, 112, 229 P. 380, denying recovery—see 3 Restatement of Torts, § 526, Comment f, p. 65], we are definitely of the opinion that cases, such as the instant one, are not suits which properly may be fit or forced into the mold for conventional fraud and deceit actions and in which sufficiency of the petition depends upon averment of all essential elements in such actions as detailed in the Powers and Salmon cases, supra. (All emphasis herein is ours.)

For, as distinguished authorities in this field point out, "(i)n many instances there is liability for business loss caused by misrepresentations which are not fraudulent, i. e., when 'scienter' is not present." 1 Harper & James, Torts, § 7.1, loc. cit. 528–529 (1956). "There is * a genuine exception to the rule that honest belief in the truth will insulate the speaker from liability, in the doctrine developed by a number of American courts, that a statement of fact which is capable of accurate ascertainment, if made by one as true to his own knowledge, will render him liable, in the event of its falsity. * * * (T)he speaker may

in fact have an honest belief in the truth, that is, he might neither have known that his statement was false nor have doubted its truth, nor yet have been utterly reckless in making it. Indeed, he might even have had reasonable grounds to believe his statement true and thus free from negligence. His liability, as measured by the principles of tort law, is based upon a factual situation closely akin to that found in the case of warranty. The important factors are the nature of the statement made, the confidence with which the speaker makes it, the corresponding likelihood of the hearer relying thereon and the benefits accruing to the speaker from the transaction. *The liability predicated upon such a statement should be recognized as one resting upon legal principles differing both from the law of warranty and the law of deceit.* Although warranty and deceit were confused in their origins, the development of the two ideas has proceeded from entirely different considerations of social policy, and *liability for unintended, nonnegligent misrepresentations, though analogous in many respects to liability in warranty, is yet fundamentally tort in character."* (All emphasis herein is ours.) 1 Harper & James, Torts, § 7.3, loc. cit. 535–536.

Of course, scienter has been demonstrated in many instances in which the general rule announced at 76 A.L.R. 268, 269, has found application. But, the language in which that rule was formulated does not, either expressly or by implication, make recovery thereunder dependent upon a showing of scienter; and, that proof of scienter is not a prerequisite to recovery, where the facts otherwise justify a finding for plaintiff contractor, is confirmed by the recoveries not only in those cases [3] where

3. E. g., Mancy v. Oklahoma City, 150 Okl. 77, 300 P. 642, 644, 76 A.L.R. 258, 262, where it was stipulated that revelation of the true condition misrepresented to the contractor came as "a surprise" to all parties; United States v. Spearin, 248 U.S. 132, 134, 39 S.Ct. 59, 60, 63 L. Ed. 166, 168, where "(t)he government officials concerned with the letting of the

contract * * * did not know of the existence" of the condition which subsequently resulted in flooding of the project; and Hollerbach v. United States, 233 U.S. 165, 172, 34 S.Ct. 553, 556, 58 L.Ed. 898, 901, where the statements under consideration were characterized as "mistaken representations."

the reported opinions affirmatively indicate no scienter but also in other instances [4] where the relative unimportance of scienter is suggested by the absence of any factual recital or legal discussion directed thereto. As capsuled in irreducible brevity, the basis of a suit such as this is that "(t)here was a deceptive representation * * * and it misled." Christie v. United States, 237 U. S. 234, 241, 35 S.Ct. 565, 567, 59 L.Ed. 933, 936; City of Dallas v. Shortall, supra, 114 S.W.2d loc. cit. 540. In fine, it appears that actions of this character are sui generis in nature and sound in tort.

The petition before us alleges "misrepresentation," which "'(i)n popular use * * often conveys the idea of intentional untruth'" [State ex rel. Williams v. Purl, 228 Mo. 1, 24, 128 S.W. 196, 202] and "'(c)olloquially * * * is understood to mean a statement made to deceive or mislead.'" Reed v. Travelers' Ins. Co., 227 Mo.App. 1155, 1165, 60 S.W.2d 59, 64; Haigh v. White Way Laundry Co., 164 Iowa 143, 147, 145 N.W. 473, 474, 50 L.R.A.,N.S., 1091. See also New York Life Ins. Co. v. Calhoun, 8 Cir., 114 F.2d 526, 544(11), certiorari denied 311 U.S. 701, 61 S.Ct. 141, 85 L.Ed. 455. But, should we otherwise construe plaintiff's averment of "misrepresentation" as simply an "untrue, improper, or unfaithful representation" [Webster's New International Dictionary, 2nd Ed., p. 1570] and nothing more than words or other conduct amounting to an assertion not in accordance with the truth [3 Restatement of Torts, § 525, Comment b, p. 60], thus eliminating any connotation of scienter, i. e., "the state of mind which makes false representations fraudulent" [1 Harper & James, Torts, § 7.3, p. 532], the nature of

plaintiff's cause of action would not be changed or affected.

The alleged misrepresentation pertained to the quantity of earth to be excavated for the sewage disposal lagoon. That was a fact patently material, i. e., "to which a reasonable man would attach importance in determining his choice of action in the transaction in question" [3 Restatement of Torts, § 538(2)(a), p. 86], and obviously susceptible of reasonably accurate mathematical computation by consulting engineers qualified to accept municipal employment on such projects.[5] The statement of quantity in the contract form, to wit, "approximately 18,000 cu yds of earth work," was a statement of fact and not of opinion [Board of Water Com'rs of New London v. Robbins & Potter, supra, 74 A. loc. cit. 943(3)] and inclusion of the word "approximately" does not justify our acceptance of defendant's contention that there was nothing more than a mere "mistake in estimates" for which there could be no liability. Although use of "approximately" is intended to afford a margin for moderate excess or deficiency [Cavender v. B. Johnson & Son, Mo.App., 212 S.W. 53, 54] or, as otherwise stated, "'to cover (relatively) negligible deviations from entire accuracy'" [Fitzgerald v. Thompson, 238 Mo.App. 546, 557, 184 S.W.2d 198, 204; City of Richmond v. I. J. Smith & Co., 119 Va. 198, 89 S.E. 123, 126], the word indicates "near to correctness; nearly exact; not perfectly accurate" [Webster's New International Dictionary, 2nd Ed., p. 133; Fitzgerald v. Thompson, supra] and suggests "some approach to exactness in respect to quantity." Odom v. Langston, 237 Mo.App. 721, 724, 170 S.W.2d 589, 590. We are satisfied beyond doubt that 36,000 cubic yards could not be regarded as an approximation of

---

4. Pitt Const. Co. v. City of Alliance, Ohio, 6 Cir., 12 F.2d 28; United States v. L. P. & J. A. Smith, 256 U.S. 11, 41 S.Ct. 413, 65 L.Ed. 808.

5. Vaughan v. Ford, 162 Mich. 37, 127 N.W. 280, 282; Palmberg v. City of Astoria, 101 Or. 224, 199 P. 630, 632, 16 A.L.R. 1125, 1130; Board of Water

Com'rs of New London v. Robbins & Potter, 82 Conn. 623, 74 A. 938, 943. See also Hartsman v. Mueller, 195 Wis. 485, 218 N.W. 854(1); Rustuen v. Apro, 40 Wash.2d 395, 243 P.2d 479, 482(2). Contrast Paulus v. Board of Education of City of St. Louis, Mo.App., 347 S.W.2d 425.

18,000 cubic yards, and that the tolerance afforded by "approximately" could not be stretched to cover that difference.[6]

That defendant intended for bidders to rely upon the representation of "approximately 18,000 cu yds of earth work" is, we think, fairly inferable. For, if bidders were to be wholly dependent upon their own investigations and computations and if their lump sum bids were not to be influenced by the quoted representation, why was it included in the contract form instead of the relatively innocuous and meaningless description in the notice to bidders, "10 acres Sewage Disposal Lagoon"? In the paraphrased language of Hollerbach v. United States, 233 U.S. 165, 172, 34 S.Ct. 553, 556, 58 L.Ed. 898, 901, "(i)f the (city) wished to leave the matter open to the independent investigation of the (bidders), it might easily have omitted the specification * * *. In its positive assertion of the nature of this much of the work it made a representation upon which the (bidders) had a right to rely without an investigation to prove its falsity." See also Pennsylvania Turnpike Commission v. Smith, supra, 39 A.2d loc. cit. 142, and Board of Water Com'rs of New London v. Robbins & Potter, supra, 74 A. loc. cit. 947(19). " 'A person ought

either to be silent or to speak the truth, and, in case he spoke at all, was bound to disclose the real fact.' " Jackson v. State, 210 App.Div. 115, 205 N.Y.S. 658, 662, affirmed 241 N.Y. 563, 150 N.E. 556. In determining the sufficiency of plaintiffs' petition, we accept their specific averments that they relied upon the quoted misrepresentation and were damaged as a result thereof.

■ Abundant and persuasive authority[7] from other jurisdictions supports the general rule stated at 76 A.L.R. 268, 269. Nothing cited to or found by us militates against its recognition in Missouri.[8] Broadly construing instant plaintiffs' petition and according it the benefit of all reasonable and fair intendments, we are constrained to hold that the petition states a cause of action on the theory expressed in the A.L.R. rule. Having concluded that this cause of action sounds in tort, "contract cases *. * *, as the cases themselves point out, do not govern." Cook v. Kansas City, 358 Mo. 296, 299, 214 S.W.2d 430, 432. And, in the construction, maintenance and operation of a sewer system and sewage disposal lagoon, an authorized municipal function [V. A.M.S. §§ 88.670, 88.767, 88.832 et seq.], de-

---

6. Pitt Const. Co. v. City of Alliance, Ohio, supra, 12 F.2d loc. cit. 30(1); Vaughan v. Ford, supra, 127 N.W. loc. cit. 282; Dunbar & Sullivan Dredging Co. v. State, Ct.Cl., 34 N.Y.S.2d 848, 850, reversed on another ground (but approved on this point) 259 App.Div. 440, 20 N.Y.S.2d 127, 131; City of Richmond v. I. J. Smith & Co., 119 Va. 198, 89 S.E. 123, 126(1); Atlantic & Pacific Packing Co. v. Weinstein, 272 App.Div. 1073, 75 N.Y.S.2d 51, 52; Ross v. Keaton Tire & Rubber Co., 57 Cal.App. 50, 206 P. 645, 646–647(1); 3 Restatement of Torts, § 538, Comment d, p. 87.

7. In addition to the numerous cases cited in annotation 76 A.L.R. 268, see Valentini v. City of Adrian, 347 Mich. 530, 79 N.W. 2d 885, 893, observing that "Michigan has already gone beyond the general rule in most jurisdictions as stated in A.L.R."; Maryland Casualty Co. v. City of Seattle, 9 Wash.2d 666, 116 P.2d 280, 282 (1), quoting this "basic principle of law";

Gogo v. Los Angeles County Flood Control Dist., 45 Cal.App.2d 334, 114 P.2d 65, 69(5); Board of Water Com'rs of New London v. Robbins & Potter, supra; Walla Walla Port Dist. v. Palmberg, 9 Cir., 280 F.2d 237, 247.

8. In Samuel Kraus Co. v. Kansas City, Mo., 315 S.W.2d 758, 763, it was "assumed with respect to the estimated quantities that the applicable rule" was as quoted from annotation 76 A.L.R. 268, 269, but this rule was not determinative of plaintiff Kraus' novel and unprecedented suit "to recover damages for 'underruns,' * * * work the contractor did not in point of fact perform." In Sandy Hites Co. v. State Highway Commission, 347 Mo. 954, 965–966, 149 S.W. 2d 828, 834–835, plaintiff cited and the court noted cases from other jurisdictions permitting recovery for misrepresentation of conditions unknown to the contractor, but "nothing was misrepresented in this (Sandy Hites) case."

fendant, a city of the fourth class, has no tort immunity.[9]

Defendant's further contention that plaintiffs are not within the general rule stated at 76 A.L.R. 268, 269, because that rule is applicable only "where *plans or specifications* lead a public contractor reasonably to believe that conditions indicated therein exist" whereas the misrepresentation in the instant case was contained in the "Contract Form and Bidders Blank" is without substance or merit, for the published "Notice to Bidders" specifically required that "bids must be submitted on proposal blanks *attached to the specifications*" and the contract form came to plaintiffs attached to and as a part of a copy of the plans and specifications.

We should not leave this case without observing that, in considering the single issue as to the sufficiency of plaintiffs' petition to state a cause of action, only the contract form has been before us and the remainder of the plans and specifications (by reference made a part of the contract form) has not been presented or reviewed. Thus, our holding on this appeal should not be misconstrued as prejudging the case on its merits or as indicating any opinion with respect to the legal effect of provisions frequently included in such specifications which, as it may be said without criticism, are calculated to afford a large measure of protection to the governmental agency or political subdivision and very little to the contractor. For examples of such provisions, consult Sager v. State Highway Commission, 349 Mo. 341, 347, 160 S.W.2d 757, 760; United Const. Co. v. City of St. Louis, 334 Mo. 1006, 1015–1016, 69 S.W.2d 639, 642–643; Stiers Bros. Const. Co. v. Moore, Mo.App., 158 S.W.2d 253, 255. In short, we hold only that plaintiffs should not have been cast upon defendant's motion to dismiss their petition.

The judgment of dismissal is set aside and the cause is remanded for further proceedings not inconsistent with this opinion.

McDOWELL and RUARK, JJ., concur.

9. Donahew v. City of Kansas City, 136 Mo. 657, 634–667(1), 38 S.W. 571, 572–573(1); Jamison v. Kansas City, 223 Mo.App. 684, 698, 17 S.W.2d 621, 628 (9); Lucas v. City of Louisiana, Mo. App., 173 S.W.2d 629, 636(11). See also Cook v. Kansas City, 358 Mo. 296, 299–300, 214 S.W.2d 430, 432; Windle v. City of Springfield, 320 Mo. 459, 464, 8 S.W. 2d 61, 62; Hannan v. Kansas City, 187 Mo.App. 315, 173 S.W. 703, 705(2); annotation 57 A.L.R.2d 1336, 1338.